UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD CARROLL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 8291 |
| ) | |
| DIEDERICH, ET AL. ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Richard Carroll filed a *pro se* Complaint against a number of Illinois state and local governmental actors, alleging violations of his Constitutional rights. Several defendants filed motions to dismiss Carroll's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, we grant defendants' motions to dismiss, in part.

## BACKGROUND

On December 23, 2004, *pro se* Plaintiff Richard Carroll filed a lawsuit against a number of state and local governmental entities, alleging violations of his rights under the Illinois and United States constitutions.[1] Specifically, Carroll alleges that the Village of South Chicago Heights and its police department conducted illegal searches and seizures, violated his privacy and conspired to

---

[1] Throughout his Complaint, Carroll recites – and alleges that defendants violated – Article I, Sections 1, 2, 6, 7, 8, 10, 12, 13, and 19 of the Illinois constitution, as well as the Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendments of the United States constitution. Although he does not explicitly base his lawsuit on 42 U.S.C. § 1983, we presume his claims for violations of his federal constitutional rights arise under that statute. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997).

deny him his right to a jury trial. (Compl. ¶¶ 1-2.)² Carroll claims that a South Chicago Heights hearing officer, James Molecek, deprived him of his right to a jury trial and due process of law. (Compl. ¶ 3.) He also claims that Illinois Assistant State's Attorneys Michael Evans and Kelly Grekstas conspired to deny his rights to a jury trial and to self-representation and attempted to force him to incriminate himself by referring him for a BCX (behavioral clinical examination). (Compl. ¶ 4.) The Complaint includes an allegation that the Supreme Court of Illinois also denied his right to a jury trial.³ (Compl. ¶ 5.) Carroll further alleges that the State of Illinois, as represented by Lisa Madigan, sentenced him to death by liver disease, denied his right to due process and conspired to deny his right to a jury trial. (Compl. ¶ 6.) He allegedly contracted the terminal disease while illegally incarcerated at the Markham Court jail in October 2003. Finally, Carroll claims that Judges Green-Thapedi and Panici violated his right to a jury trial. (Compl. ¶ 7.) Carroll seeks $4,000,000 and an injunction against the State of Illinois and the Village of South Chicago Heights.

---

²Carroll's Complaint contains no formal structure, such as numbered paragraphs. Rather, it includes a chart identifying the defendants and summarizing Carroll's charges. For ease of reference, we treat each row of Carroll's chart as a separate paragraph and number the paragraphs accordingly.

³Although Carroll's allegations against the Supreme Court of Illinois are directed to the attention of Kathy Twine, it is not clear that Carroll is suing her directly. (Compl. ¶ 5.) According to the motion to dismiss filed on her behalf, Twine is counsel for the State of Illinois Judicial Inquiry Board. For purposes of evaluating her motion only, we will consider her to be a defendant.
 While her name does not appear on the face of the Complaint, Althea K. Welsh, Senior Counsel of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC") stepped forward as a "proposed" defendant in this action.

**STANDARD OF REVIEW**

The purpose of a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Thompson v. Illinois Dep't of Prof'l Regul.*, 300 F.3d 750, 753 (7th Cir. 2002); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union*, 78 F.3d at 1210. The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U. S. Dept. Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

Dismissal under Rule 12(b)(6) is warranted only if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). However, a court need not "strain to find inferences favorable to the plaintiffs which are not apparent on the face of the complaint." *Coates v. Illinois State Bd. of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977). When, as in the present case, a plaintiff is proceeding *pro se*, we have a special responsibility to construe the complaint liberally. *See Donald v. Cook County Sheriff's*

3

*Dep't*, 95 F.3d 548, 555 (7th Cir. 1996).

**ANALYSIS**

In their motions, Defendants Evans, Grekstas, Green-Thapedi, Panici, Madigan, Twine and Welsh argue that Carroll's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because he lacks standing and because they are protected by sovereign, prosecutorial, or judicial immunity. Each of these defendants also contend that Carroll fails to state a claim upon which relief can be granted.[4]

As the Seventh Circuit has noted, "[s]ubject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). Accordingly, we will first address the several challenges raised by defendants based on Eleventh Amendment and common law immunities. We will also consider whether Carroll has standing to pursue any remaining claims and, as appropriate, whether he has stated a claim pursuant to Rule 12(b)(6).

    *A.*    *Eleventh Amendment Principles*

Interpreting the Eleventh Amendment of the United States constitution, the Supreme Court "has consistently held that an unconsenting state is immune from suits brought in federal court by her own citizens." *Edelman v. Jordan*, 415 U.S. 651, 662-663, 94 S.Ct. 1347, 1355 (1974); *see Ameritech Corp. v. McCann*, 297 F.3d 582, 585-586 (7th Cir. 2002). There are two circumstances, however, under which the "state's sovereign immunity is not absolute." *Ameritech Corp.,* 297 F.3d

---

[4]Defendants Madigan and Twine, along with the ASA Defendants, informed the Court that Carroll faxed them a document entitled "motion" on October 8, 2005, in which he attempted to dismiss his cause of action without prejudice. (Resp. Pl.'s Mot. Dismiss ¶¶ 3-4.) Because Carroll did not file the motion with the Court, we are unable to rule or comment on this purported voluntary dismissal.

at 585. "[A] state may waive the protections . . . and consent to suit in federal court, or Congress may use its enforcement powers under the fourteenth amendment to abrogate the states' eleventh amendment immunity." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 291 (7th Cir. 1993).

"State agencies and officials sued in their official capacities are 'the state' for Eleventh Amendment purposes." *Olison v. Ryan*, No. 99 C 4384, 2000 WL 1263597, at *4 (N.D. Ill. Sept. 5, 2000) (*citing Will v. Michigan Dep't State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989)). Thus, whether a state official is immune from suit in federal court under the Eleventh Amendment depends on whether the official is sued in his or her official or individual capacity. *See Kroll v. Bd. Trs. Univ. of Illinois*, 934 F.2d 904, 907-08 (7th Cir. 1991); *Catlett v. Peters*, 32 F. Supp. 2d 1010, 1011-1012 (N.D. Ill. 1998). Unlike an official capacity suit, an individual capacity suit for damages is not barred because the plaintiff's recovery would come from the official's personal assets, rather than those of the state. *Kroll*, 934 F.2d at 907-908. On the other hand, an official capacity suit for injunctive relief may proceed only "in the limited circumstances identified by the Supreme Court in *Ex Parte Young*." *Ameritech Corp.*, 297 F.3d at 585-586; *see Ex Parte Young*, 209 U.S. 123, 159-160, 28 S.Ct. 441, 453-454 (1908); *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999). Under the *Ex Parte Young* doctrine, a private party may sue a state official for injunctive relief if the complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland Inc. v. Public Serv. Comm. Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 1760 (2002); *see Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 364-365 (1991).

Given the restrictions imposed by the Eleventh Amendment, the distinction between an individual and official capacity suit is significant. *See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th

Cir. 1991). Where a Section 1983 complaint fails to indicate the defendant official's capacity, the Court must review the complaint in its entirety to determine the capacity at issue. *See Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000); *Hill*, 924 F.2d at 1373-1374; *Boyce v. Fairman*, 24 F. Supp. 2d 880, 884 (N.D. Ill. 1998). Indeed, a plaintiff's omission of the phrase "individual capacity" does not foreclose the existence of such a claim. *Hill*, 924 F.2d at 1373. The Seventh Circuit in *Hill* held that "where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity."[5] 924 F.2d at 1374. In addition, "an official capacity suit will be presumed when the indicia of an official policy or custom are present in the complaint." *Id.* at 1373. When evaluating an official's capacity, a court may consider the express language of the allegations, the nature of the claims, the remedies sought, and whether the defendant raised any individual immunity defenses. *See Miller*, 220 F.3d at 494 (concluding that individual suit existed where plaintiff did not suggest governmental policy or custom and defendant asserted qualified immunity defense); *Hill*, 924 F.2d at 1373-1374 (holding that individual suit was intended where plaintiff sought punitive damages and did not allude to an official policy or custom). With these principles in mind, we review Carroll's Complaint with respect to each moving defendant.

---

[5] To establish personal liability under 42 U.S.C. § 1983, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105-3106 (1985). To state a claim for an official capacity suit, however, the plaintiff must allege that the official's action under the color of state law is linked to a government policy or custom. *Id.; Hill*, 924 F.2d at 1372.

B.  *Defendants State of Illinois and Lisa Madigan*

In the Complaint, Carroll alleges that the "State of Illinois as represented by Lisa Madigan" imposed a "death sentence by Liver Disease" and engaged in a "conspriacy [sic] to deny right to jury trial and denial of due process." (Compl. ¶ 6.) To the extent that Carroll attempts to sue the State of Illinois directly in this Court, the Eleventh Amendment absolutely and unquestionably bars any such action. *MSA Realty Corp.*, 990 F.2d at 291; *see Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999) ("[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983.").

With respect to the claim against Madigan, we observe that Carroll explicitly identifies her as a representative of Illinois. (Compl. ¶ 6.) Based on our review of the Complaint, it appears that the Madigan's death or her replacement as Attorney General would result her successor's automatic substitution as a defendant in this action. *Graham*, 473 U.S. at 166; *see* Fed. R. Civ. P. 25(d)(1). Accordingly, we conclude that Carroll sues Madigan in her official capacity as Attorney General. As noted earlier, the Eleventh Amendment shields Madigan from an official capacity lawsuit seeking monetary damages.

Carroll's claim for an injunction – requiring the State of Illinois (through Madigan) to adhere to the doctrines of the United States and Illinois constitutions – similarly fails. While Carroll's Complaint consists of conclusory allegations that his rights were violated, it does not include claims of an ongoing federal wrong as required by *Ex Parte Young*. He does not describe any pending criminal matters brought against him by the State of Illinois and admits in his Complaint that he already "won all three cases against him." Thus, there can be no ongoing violation of his trial or jury rights. He also acknowledges that he was not found guilty, so there can

7

be no ongoing violation of his rights under the Eighth Amendment. *See Palmer v. Marion Cty.*, 327 F.3d 588, 593 (7th Cir. 2003). As a result, he is foreclosed from pursuing injunctive relief against Madigan.[6]

We further find that Carroll does not seek to hold Madigan individually liable. He does not claim that she personally engaged in any tortious conduct, nor does he seek punitive damages. *See Miller*, 220 F.3d at 494*; Hill*, 924 F.2d at 1374. He mentions her by name once, and only as a representative of the State of Illinois. (Compl. ¶ 6.) Considering the Complaint in its entirety, we hold that Carroll's allegations against Madigan are barred, and dismiss the Complaint as it relates to her.

### C. Defendants Supreme Court of Illinois and Kathy Twine

As noted above, state agencies and their officials are cloaked with the same Eleventh Amendment immunity that protects the state. Consistent with that principle, "[t]he Eleventh Amendment bars federal jurisdiction here since the Illinois Supreme Court itself is the named defendant." *Landers Seed Co., Inc. v. Champaign Nat'l Bank*, 15 F.3d 729, 731-732 (7th Cir. 1994) (also noting that courts are not "persons" subject to suit under Section 1983); *see Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725, 727 (7th Cir. 1999); *Purmal v. Supreme Court of Illinois*, No. 03 C 6061, 2004 WL 542528, at *4 (N.D. Ill. Feb. 26, 2004). Carroll simply cannot sue the Supreme Court of Illinois; his attempt to do so fails as a matter of law.[7]

---

[6]Although we need not reach the issue, we question whether Carroll would have standing to seek injunctive relief against Madigan in these circumstances. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102, 103 S.Ct. 1660, 1665 (1983); *Sierakowski v. Ryan*, 223 F.3d 440, 442-443 (7th Cir. 2000); *Perry v. Sheahan*, 222 F.3d 309, 313-315 (7th Cir. 2000).

[7]We pause to comment on Carroll's apparent unwillingness to help his own cause. His Complaint refers to a July 12, 2004 letter allegedly supporting his claims against the Illinois

8

While Carroll directs his claims against the Illinois Supreme Court to the attention of Kathy Twine, he does not indicate her job title, if he is suing her, or in what capacity he might be suing her. (Compl. ¶ 5.) As far as we can tell from the Complaint, she appears merely as a contact person for the court. In her motion to dismiss, however, Twine states that she is counsel for the State of Illinois Judicial Inquiry Board ("JIB"). (Twine Mot. ¶ 10.) The Complaint does not allege that she engaged in any tortious conduct, in either an official or individual capacity.[8] We are thus unable to evaluate conclusively whether Twine is entitled to Eleventh Amendment or some common law immunity.

Broadly reading Carroll's *pro se* Complaint, we assume – for the sake of argument only – that he is suing Twine as a representative of the Illinois Supreme Court. In such an official capacity, Twine would be immune under the Eleventh Amendment from any lawsuit seeking damages.[9]

---

Supreme Court and/or Kathy Twine. (Compl. ¶ 5.) Since the Court did not have a copy of this attachment, we ordered him to submit it, along with the missing BCX referral also cited in the Complaint. To date, however, Carroll has not submitted these materials.

Worse yet, Carroll completely neglected to respond to the motions before us. In response to a motion to dismiss raising legal questions, a "plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it." *O'Connor v. Local 881 UFCW*, No. 04 C 5636, 2005 WL 331550, at *2 (N.D. Ill. Feb. 8, 2005). Indeed, a district court may dismiss a claim challenged on a motion to dismiss if the plaintiff fails to submit a substantive response. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."). Carroll's failure to file a response addressing the legitimate concerns raised by defendants gives us an additional basis for dismissing his suit under Rule 12(b)(6). *Id.*

[8] Nor does the Complaint suggest the JIB violated Carroll's rights.

[9] As the question is not before us, we do not address whether Twine might be entitled to immunity in her position at the JIB.

9

Moreover, Carroll does not request injunctive relief against the Illinois Supreme Court.[10] In short, any official capacity claim against Twine would fall on its face.

To the extent that Twine is not associated with the Illinois Supreme Court, or is not otherwise immune, Carroll still fails to state a claim implicating her upon which relief may be granted. Cognizant of the minimal requirements of federal notice pleading and our duty to broadly construe a *pro se* complaint, we conducted a painstakingly close review of Carroll's Complaint. *See* Fed. R. Civ. P. 8(a); *Donald*, 95 F.3d at 555. Despite a deferential interpretation, we are unable to discern what claim he might state against Twine personally and what remedy, if any, might be available. As such, we dismiss the Complaint with respect to Twine pursuant to Rule 12(b)(6).

### D. Defendants Michael Evans and Kelly Grekstas

According to Carroll, two Illinois Assistant State's Attorneys, Evans and Grekstas (the "ASA Defendants"), conspired to deny his rights to a jury trial and to represent himself and violated his right against self-incrimination by referring him for a "<u>phony</u> Misdemeanor BCX." (*See e.g.,* Compl. ¶ 4.) (emphasis in original). Carroll further alleges that "Illinois Misdemeanor BCX is trickery and compels self-incrimination."

The ASA Defendants, like other state officials, are shielded from official capacity suits seeking monetary damages. *See Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999); *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994). Moreover, the Supreme Court in *Imbler v. Pachtman* held that state prosecutors are absolutely immune from individual liability

---

[10]Carroll seeks "a *mandatory precept* (writ of injunction)" against only "the State of Illinois and the Village of South Chicago Heights."

10

under Section 1983 for initiating (or declining to initiate) prosecution, presenting evidence, or engaging in any other "activities . . . intimately associated with the judicial phase of the criminal process." 424 U.S. 409, 430-431, 96 S.Ct. 984, 995-996 (1976); *see Ross Yordy Constr. Co. v. Naylor*, 55 F.3d 285, 286-287 (7th Cir. 1995) (affirming lower court's finding that attorney was entitled to immunity for decision to drop charges against plaintiff). Consistent with *Imbler*, and as discussed below, Carroll's suit for damages against the ASA Defendants is prohibited.

Carroll claims that he was denied a jury trial in connection with the three cases he previously "won." Based on the ASA Defendants' motion and Magistrate Judge Levin's September 14, 2005 order, we understand that these criminal matters against Carroll were dropped in November 2004.[11] (9/14/2005 Minute Order; ASA Defs' Mot. 11-12.) Because Carroll apparently sues the ASA Defendants for their decision to drop those charges, thus "denying" him a jury trial, they are absolutely immune under *Imbler*. In any event, we agree with the ASA Defendants that "[t]here can be no denial of one's right to a jury trial when there is no trial and the charges are dismissed." (ASA Defs' Mot. 11-12.) Even if we had jurisdiction to address this issue, Carroll fails to state a claim against the ASA Defendants for denial of his right to a jury trial.

We reach the same conclusion with respect to his amorphous claim that the ASA Defendants violated his right to self-representation. As Carroll contends, a criminal defendant has the right to represent himself. *See, e.g., Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533 (1975). Without doubt, the decision to proceed *pro se* is an integral aspect of the criminal process. Assuming Carroll alleges that the ASA Defendants attempted to influence his decision to represent

---

[11]Carroll does not allege the existence of any current criminal charges against him.

11

himself, they are immune under *Imbler*.[12]

Carroll also neglects to state *how* the ASA Defendants interfered with his right to represent himself or what remedy would cure the violation. The Complaint does not indicate whether he demanded to represent himself, whether the Illinois court appointed counsel against his wishes, or how the prosecutors participated. The Complaint alleges that a judge instructed him that he would face prison time if he proceeded without counsel. With regard to the ASA Defendants, it states only: "Conspiracy to deny right to jury trial and to force self incrimination and due process of self-representation." (Compl. ¶ 4.) This bald allegation is insufficient to set forth a Section 1983 claim for personal liability. In addition, we cannot fathom any relief that could cure the alleged offense.

We similarly dismiss the claim that the ASA Defendants violated Carroll's constitutional rights by referring him for a behavioral examination. First, and as noted in two unpublished Seventh Circuit opinions, the referral of a criminal defendant to a mental health professional for a competency evaluation is an activity "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Under Illinois law, state prosecutors are authorized to raise the issue of a defendant's mental or physical fitness to stand trial. *See* 725 ILCS 5/104-11. Without a fitness determination, the trial may not proceed in the same manner, or at all. As such, the ASA Defendants are absolutely immune from personal liability related to the issuance of a BCX referral – even if it was "fraudulent, inept, and non existent," as Carroll insists. *See Smith v. Power*, 346 F.3d 740, 743 (7th Cir. 2003) ("[A] prosecutor does not lose the protection of absolute immunity by

---

[12]It is not uncommon, or necessarily inappropriate, for prosecutors to participate in the courtroom discussion regarding a defendant's request to proceed without counsel. *See, e.g. U.S. v. Hill*, 252 F.3d 919, 927-928 (7th Cir. 2001) (observing that prosecutor "chimed in with some additional advice" regarding the "drawbacks of self-representation"). To the extent that Carroll's lawsuit stems from such conduct, it is meritless.

merely exceeding his authority; only when a prosecutor acts in the clear absence of all statutory authority is the immunity lost.").

Second, if Carroll is suing the ASA Defendants in their *official* capacities for injunctive relief, attacking the State's policy or practice of issuing allegedly unconstitutional BCX referrals, his claim still fails.[13] As described earlier, private parties may sue state officials in their official capacities if plaintiffs allege ongoing or threatened violations of federal law and request prospective relief. *Verizon Maryland Inc.*, 535 U.S. at 645; *Ex Parte Young*, 209 U.S. at 159-60. Here, however, Carroll has not alleged any ongoing or impending violation: he is not currently obligated to participate in any behavioral examination, nor does he face an upcoming trial at which any statements obtained during such an examination might be used against him. The purported constitutional violation is limited to the ASA Defendants' BCX referral, which occurred during – and ended with – the criminal cases dismissed last year.[14] *See Sierakowski v. Ryan*, No. 98 C 7088, 1999 WL 286290, at *2 (N.D. Ill. Apr. 27, 1999) (finding *Ex Parte Young* inapplicable where alleged violation was blood test performed without consent); *Veterans Legal Def. Fund v. Schwartz*, 26 F. Supp. 2d 1083, 1086 (C.D. Ill. 1998) (barring claim under Eleventh Amendment where alleged

---

[13]Carroll also does not explicitly seek to enjoin the State of Illinois from issuing BCX referrals in the future. Reading his Complaint liberally, we entertain the possibility that his general request for an injunction encompasses this more specific remedy.

[14]Assuming BCX referrals could be considered constitutional violations, we still question whether Carroll sufficiently alleged any past harm. As stated in the Complaint, he refused to participate in the examination to which the ASA Defendants referred him. Thus, he made no statements that could have been used against him at trial. Further, and as the ASA Defendants correctly point out, the right against self-incrimination under the Fifth Amendment is a trial right. *See Chavez v. Martinez*, 538 U.S. 760, 767, 123 S.Ct. 1994, 2001 (2003). Even if Carroll made self-incriminating statements and even if they could have been used against him under Illinois law, there could be no Fifth Amendment infringement in the absence of a trial.

13

violation "began and ended when Defendants made their hiring decisions"). Accordingly, Carroll cannot avail himself of the *Ex Parte Young* exception.

For the same reason, we conclude that Carroll also lacks standing to seek injunctive relief in a lawsuit against the ASA Defendants. To invoke federal jurisdiction, a plaintiff must demonstrate: (1) an "injury in fact;" (2) a causal link between the injury and defendant's action; and (3) that a favorable decision will likely remedy the injury. *Sierakowski*, 223 F.3d at 442-443; *Purmal*, 2004 WL 542528, at *2. The Seventh Circuit defines "injury in fact" as "an invasion of a legally recognized interest which is concrete and particularized, actual or imminent, and not conjectural or hypothetical." *Sierakowski*, 223 F.3d at 442-443. In short, the plaintiff must demonstrate "a real and immediate danger that the alleged harm will occur," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665 (1983), because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 495-496, 94 S.Ct. 669, 676 (1974). In this case, Carroll does not contend that the State of Illinois (or the ASA Defendants) will charge him with a misdemeanor, dismiss any future charges, refer him for a behavioral examination, or interfere with his right of self-representation. In addition, and pursuant to Supreme Court and Seventh Circuit precedent, we find the possibility of these events occurring simply too speculative to grant Carroll standing. *See Lyons*, 461 U.S. at 105 (holding that plaintiff lacked standing to enjoin officers from using chokeholds during future arrests); *Sierakowski*, 223 F.3d at 444-445 (affirming dismissal of case where inmate speculated that he may be tested again for HIV without consent); *Knox v. McGinnis*, 998 F.2d 1405, 1413-1414 (7th Cir. 1993) (affirming decision that prisoner returned to general population lacked standing to challenge use of black box device on inmates in segregation unit); *see also Purmal*, 2004 WL 542528, at *2 (holding that

14

plaintiff could not show realistic threat that allegedly unconstitutional court rules might be applied to her by the same judge if she filed an appeal); *Simack v. City of Chicago*, No. 02 C 3139, 2003 WL 924335, at *3-4 (N.D. Ill. Mar. 6, 2003) (dismissing, for lack of standing, hypothetical claim that plaintiff will continue to panhandle and will be arrested for a misdemeanor while doing so).

Finally, Carroll's accusation that the ASA Defendants conspired to commit these violations does not resurrect his flawed claims.[15] The ASA Defendants may not be "held liable under § 1983 for conspiring to commit an act for which [they are] protected from § 1983 liability by absolute immunity." *House v. Bedford*, 956 F.2d 711, 720 (7th Cir. 1992) (holding that immune witness could not be sued for conspiracy to commit perjury); *see Bernal v. Shifflet*, No. 95 C 843, 1995 WL 417552, at *4 (N.D. Ill. July 13, 1995) (dismissing conspiracy claim against prosecutor who allegedly concealed witnesses and police misconduct). Moreover, Carroll cannot successfully claim that an unlawful conspiracy existed to engage in lawful conduct. "Section 1983 does not . . . punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises." *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982); *see Indianapolis Minority Contractors Assoc., Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) (conspiracy count precluded in the absence of underlying violation). In light of the ASA Defendants' absolute immunity and Carroll's lack of standing, we dismiss all allegations against the ASA Defendants, including Carroll's conspiracy charge.

---

[15]Because we dismiss Carroll's claims on other grounds, we will not evaluate whether the bare-bones Complaint sufficiently pleads conspiracy. *See Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (requiring that plaintiff set forth "the parties, general purpose, and approximate date" of the conspiracy); *Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 967 (N.D. Ill. 2003) (sufficient allegations plead where plaintiff claimed all defendants conspired over eleven-month period to violate his rights).

### E. Defendant Judges Green-Thapedi and Panici

Carroll claims that two Illinois judges, Llwellyn Green-Thapedi and Luciano Panici (the "Defendant Judges") denied his right to a jury trial. (Compl. ¶ 7.) Though unclear, the Complaint also suggests that, like the ASA Defendants, the Defendant Judges violated his right to self-representation and against self-incrimination. (*Id.*) We initially observe that Carroll fails to state what government policy or custom underlies the Defendant Judges's unlawful conduct. *See Graham,* 473 U.S. at 166; *Hill*, 924 F.2d at 1372. Based on that omission, we are not convinced that Carroll intends an official capacity claim against the Defendant Judges. Nonetheless, such a claim against the Defendant Judges – presumably as officials of the State of Illinois or its court system – would be barred by the Eleventh Amendment. *See Landers Seed Co., Inc.*, 15 F.3d at 731-732; *Crenshaw*, 170 F.3d at 727.[16]

In any event, the Defendant Judges correctly argue that absolute judicial immunity bars Carroll's suit. Judges are entitled to absolute immunity if they (1) perform the questioned acts in their judicial capacity; and (2) have the jurisdiction to do so. *See Stump v. Sparkman*, 435 U.S. 349, 356-357, 98 S.Ct. 1099, 1104-1106 (1978); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001); *Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000); *Davit v. Davit*, 366 F. Supp. 2d 641, 658-659 (N.D. Ill. 2004). This doctrine applies equally to lawsuits brought under Section 1983. *Stump*, 435 U.S. at 355. Immunity will extend "even if the action was in error, was done

---

[16]If Carroll intended to seek injunctive relief, he would be barred from doing so under Section 1983. 42 U.S.C. § 1983 ("Every person . . . shall be liable to the party injured . . . except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."); *see also Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir. 2004).

16

maliciously, was in excess of [the judge's] authority, and even if [the] exercise of authority is flawed by the commission of grave procedural errors." *Brokaw*, 235 F.3d at 1015 (internal citations omitted).

As we construe the Complaint, Carroll's allegations stem from the Defendant Judges's rulings on whether to allow a jury trial, whether to allow Carroll to represent himself during criminal proceedings, and whether to allow a BCX referral. These courtroom decisions certainly would fall to the Defendant Judges in their official capacities. *See Davit*, 366 F. Supp. 2d at 659 (dismissing claims directed against judges for actions taken during course of divorce proceedings); *Jones v. Wright*, No. 03 C 7330, 2004 WL 1656575, at *2 (N.D. Ill. July 23, 2004) (finding that "acts of not compelling certain witnesses to testify, not allowing Plaintiff to testify, and retrieving a document from Plaintiff's possession are all clearly functions normally performed by judges"). With respect to the BCX referral claim, Illinois criminal procedure explicitly authorizes the court to raise the issue of a criminal "defendant's fitness for trial, to plead, or to be sentenced . . . at any appropriate time before a plea is entered or before, during, or after trial." 725 ILCS 5/104-11.

Regarding Carroll's self-representation claim, we recognize that judges are required by state and federal law to inform criminal defendants of the risks and disadvantages of proceeding *pro se*. Illinois Supreme Court Rule 401, for example, provides that no waiver of counsel will be effective unless the court informs the accused of the nature of the charge, the minimum and maximum penalties, and the right to counsel. Ill. S.Ct. Rule 401(a); *People v. Langley*, 226 Ill. App. 3d 742, 748-752, 589 N.E.2d 824 (4th Dist. 1992); *see U.S. v. Hill*, 252 F.3d at 924-928 (evaluating whether defendant's waiver was knowing and intelligent, and discussing the "litany" of "extensive advice and warnings" suggested for federal judges). Carroll laments that the "first judge" instructed him

that "unless he gets a lawyer [he] would go to jail for one and one half years."[17] Though Carroll may have perceived this instruction as an insult or threat to his constitutional rights, the Defendant Judges were in fact obligated to deliver such a warning, as part of their official duties. And – as with the ASA Defendants – we find that the Defendant Judges did not "deny" Carroll a jury trial where no trial took place.

As to the second prong of the judicial immunity analysis, Carroll does not question the Defendant Judges's jurisdiction over his criminal (or other) proceedings. To the contrary, his Complaint suggests that they presided over his criminal matters in the Circuit Court of Cook County, which is a court of original, general subject-matter jurisdiction. *See* Ill. Const., art. V, § 9. Based on the allegations of the Complaint, judicial immunity shields the Defendant Judges from liability for monetary damages.[18]

### F. "Proposed" Defendant Althea Welsh

Even moreso than with Kathy Twine, we are befuddled by the participation of "proposed" defendant Althea K. Welsh in this lawsuit. According to her motion to dismiss, Welsh is Senior Counsel for the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ("ARDC"). (Welsh Mot. ¶ 1.) Carroll named neither Welsh, nor the ARDC, as defendants in the Complaint. Although Carroll failed to provide us with the July 12, 2004 letter referenced in the

---

[17]Carroll does not specify when or how he encountered the Judges, nor does he identify "the first judge." He also neglects to include additional details about the alleged offense, including whether he attempted to waive representation or if the court forced him to accept counsel.

[18]To the extent Carroll suggests the Defendant Judges engaged in some conspiracy with the ASA Defendants, (Compl. ¶¶ 4, 7), we add that the immunity afforded the Defendant Judges could not be defeated by mere allegations of conspiracy. *Brokaw*, 235 F.3d at 1015; *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990).

Complaint, Welsh's motion describes the letter and explains her voluntary appearance in this action.

The July 12 letter, signed by Welsh, informed Carroll that the ARDC would not "pursue an investigation against an attorney who, apparently, presided as a hearing officer in a ordinance violation matter in which the Plaintiff was involved."[19] (Welsh Mot. ¶ 2.) Welsh, seemingly convinced that Carroll intended to sue the ARDC based on that decision, does not challenge his misidentification of defendants or his improper service of process. (*Id.* ¶ 3.) She presumably consents to personal jurisdiction so she can get in this lawsuit, in order to get out of it.

Unfortunately, we cannot oblige. On its face, the Complaint literally (rather than just legally) does not state a claim against Welsh or the ARDC, and we have nothing to dismiss. As this juncture, we are bound to consider only the four corners of the Complaint. Welsh is not implicated – by name, title, conduct or otherwise – in the Complaint, and the July 12 letter referenced therein is not part of our record. Welsh acknowledges that she has not been served. It is unclear how Welsh and the ARDC became "proposed" defendants in this action or whether Carroll intends to amend his Complaint to add them as parties. Because Welsh is not a party to the action at this time, her motion is not properly before us. As a result, we strike Welsh's motion.

### G. Failure to Serve Process on Remaining Defendants

Having disposed of the claims against Defendants State of Illinois, Supreme Court of Illinois, Evans, Grekstas, Green-Thapedi, Panici, Madigan and Twine (and concluding that there is no claim against Welsh), we briefly address the allegations remaining against the Village of South Chicago Heights, the South Chicago Heights Police Department and James Molecek (the "SCH Defendants").

---

[19]This information, coupled with certain allegations in the Complaint, raise an inference that Carroll complained about Defendant Molecek to the ARDC.

19

Despite our order of July 22, 2005 and the requirements of Rule 4 of the Federal Rules of Civil Procedure, Court records bear no indication that Carroll served the SCH Defendants. Accordingly, and pursuant to Rule 4(m), we *sua sponte* dismiss without prejudice his claims against the SCH Defendants. *See* Fed. R. Civ. P. 4(m).

## CONCLUSION

For the above stated reasons, we grant Defendants' motions to dismiss. We lack subject matter jurisdiction over, and thus dismiss without prejudice, Carroll's claims against the State of Illinois, the Supreme Court of Illinois, Lisa Madigan, and Kathy Twine. We strike the motion to dismiss filed by non-party Althea K. Welsh. We dismiss Carroll's claims against the ASA Defendants and the Defendant Judges with prejudice, in light of their absolute common law immunities. Finally, we dismiss without prejudice Carroll's claims against the SCH Defendants for failure to complete proper service.[20] It is so ordered.

                                                      MARVIN E. ASPEN
                                                    United States District Judge

Dated: November 28, 2005

---

[20] Because we dismiss Carroll's federal claims against all defendants, we decline to exercise supplemental jurisdiction over any state law claims asserted in the Complaint. *See* 28 U.S.C. § 1367(c)(3); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995).